IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

TRICE, GEARY & MYERS, LLC,
*et al.*,

      Plaintiffs,

         v.

CAMICO MUTUAL INSURANCE
COMPANY,

      Defendant.

                     CIVIL NO.: WDQ-09-2754

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

    Trice, Geary & Myers, LLC ("TGM") and Kevin Myers (collectively, the "Plaintiffs") sued CAMICO Mutual Insurance Company ("CAMICO") for breach of contract and a declaratory judgment on the duty to defend. CAMICO counterclaimed for declaratory judgment on the duty to indemnify. Pending are CAMICO's motion to set a discovery schedule and the Plaintiffs' cross motion for final judgment. No hearing is necessary. Local Rule 105.6 (D. Md. 2011). For the following reasons, CAMICO's motion will be granted; the Plaintiffs' motion will be denied.

I. Background

A. Factual Background

TGM is an accounting firm in Salisbury, Maryland.  ECF No. 2 ¶ 4.  In 2007 and 2008, TGM purchased "claims made and reported" Accountants Professional Liability Insurance Policies from CAMICO.  *See id.*, Ex. B-1 ("APLIP").[1]  Kevin Myers is a Certified Public Accountant and principal of TGM who was insured under the Policy.  ECF No. 2 ¶ 5; APLIP § II(b).

Under the Policy, CAMICO agreed to defend[2] and indemnify[3] the insured against claims arising out of their provision of "*Professional Services*."  APLIP §§ I.A.1, I.B.1 (emphasis in original).  The Policy defined "*Professional Services*" to include activities (1) performed by an insured that benefit TGM, or (2) undertaken by an insured as a member of a professional

---

[1]  Two policies were purchased: (1) Policy No. MDL01151-05 (effective July 1, 2007 to July 1, 2008); and (2) Policy No. MDL01151-06 (effective July 1, 2008 to July 1, 2009).  The policies' relevant terms are identical.  For the sake of clarity, and unless otherwise indicated, references to "the Policy" are references to Policy No. MDL01151-05.

[2]  Section I.B.1 provided that CAMICO had "the . . . duty to defend and settle *Claims* alleging *Damages* potentially covered by this Policy, even if the *Claim* is groundless, false or fraudulent."  APLIP § I.B.1 (emphases in original).

[3]  Subject to certain limitations, Section I.A.1 required CAMICO to "pay those sums that an *Insured* becomes legally obligated to pay as *Damages* because of a *Claim* arising out of an *Insured's* negligent act, error or omission in rendering or failing to render *Professional Services*."  APLIP § I.A.1 (emphases in original).

board or committee related to the accounting profession.  *Id.* §
IV.o (emphasis in original).  "Professional Services" did not
include activities "performed by an [i]nsured in his/her
capacity as an agent or broker for the placement or renewal of
insurance products or for the sale of annuities."  *Id.* at
Special Exclusion Endorsement.

The Policy limited liability to $5,000,000 per claim and
$10,000,000 in the aggregate.  APLIP at 5.  "Claim" was defined
to include suits against the insured for money or services.  *Id.*
§ IV(c).  The Policy also imposed a $100,000 sublimit on damages
and claim expenses[4] "arising from, related to or in connection
with any *Tax Shelter Investment.*"[5]  *Id.* § I.C.1(a) (emphasis in
original).

---

[4]  The Policy defined "Claim expenses" to include "the fees
charged by an attorney designated by [CAMICO] to defend any
*[i]nsured*, and all other fees, costs and expenses resulting from
the investigation, adjustment, defense and appeal of a *[c]laim*,
if incurred by . . . an *[i]nsured* at [CAMICO]'s request."  APLIP
§ IV(d) (emphasis in original).

[5]  A "Tax Shelter Investment" is:

1.    (i)   a Treasury Regulation § 1.6011-4(b)(2)
            "reportable transaction"; OR
      (ii)  any investment or other arrangement where
            (a) the investment or other arrangement
            actually generates or (b) representations
            made as part of the investment or other
            arrangement's written sale offering indicate
            that the investment or arrangement will
            generate taxable income exclusions, tax
            deductions, or tax credits exceeding the
            investment or other arrangement's required

Claims in connection with or arising out of services provided by the insured acting in another capacity,[6] or products sold or distributed by the insured,[7] were excluded from coverage entirely. *Id.* §§ III(d), (j). The "Special Exclusion Endorsement" also excluded claims "in connection with or arising out of any act, error or omission by any [i]nsured in his/her capacity as an agent or broker for the placement or renewal of insurance products or for the sale of annuities." *Id.* at Special Exclusion Endorsement.

---

> capital contribution by at least two to one (2:1); OR
> (iii) any other investment, plan or arrangement having tax avoidance or evasion as its primary purpose. An investment, plan or arrangement will have a primary tax avoidance or evasion purpose when that purpose exceeds any other purpose of the investment, plan or arrangement; AND
> 2. Any *[i]nsured* receives or expects to receive any compensation or other payment, whether or not related to Professional Services rendered, which is a commission, profit-sharing, participation, payment in securities, success fee, or similar kind of payment dependent upon the completion or success of the transaction.

APLIP § IV(s) (emphasis in original).

[6] Specifically, the Policy did not apply to claims made "in connection with or arising out of the services of any *[p]erson* who is an *[i]nsured* acting as an employee, officer or director of any company, business, entity or charitable organization other than the *[n]amed [i]nsured*." APLIP § III(d).

[7] The Policy did not apply to claims made "in connection with or arising out of the use of, or existence of any condition in or warranty of, products sold or distributed by an [i]nsured." APLIP § III(j).

On June 2, 2008, Thomas H. Ruark and affiliated entities[8]
sued Hartford Life & Annuity Insurance Company ("Hartford") and
others[9] (collectively, the "Hartford Defendants") in the Circuit
Court for Baltimore County for claims arising from the sale of a
defined benefit pension plan funded by Hartford life insurance
policies (the "DBP Plan") to Baja Holdings in September 2003
(the "Hartford Action").[10]   ECF No. 2-3 ¶¶ 13, 28.   The Hartford
Defendants marketed the DBP Plan to Baja Holdings as a means of
obtaining "significant tax benefits" under Section 412(i) of the
Internal Revenue Code.  *Id.* ¶¶ 13, 18, 23.   Although Myers and
TGM were not defendants, the complaint alleged that Myers--while
acting as a TGM accountant and "[t]ax [a]dvisor"--recommended
the DBP Plan to Ruark and Baja Holdings without disclosing that
he was a Hartford agent and would receive commissions from the
sale.  *Id.* ¶¶ 17-18, 26-27.   Relying on Myers's advice, Baja
Holdings purchased the DBP Plan ("the Baja Policy") and
established Baja DBP to be funded through life insurance
policies purchased from Hartford.  *Id.* ¶¶ 18, 28.

---

[8] Baja Holdings, Inc. ("Baja Holdings"); and Baja Holdings, Inc.
Defined Benefit Plan ("Baja DBP") (collectively, the "Hartford
Plaintiffs").

[9] The Defendants were: Hartford, Michael A. Dimayo, and Insurance
Alternatives, Inc. ("IAI").

[10] *See Ruark v. Hartford Life & Annuity Ins. Co.*, No. 03-C-08-
006022 OT (Cir. Ct. Balt. Cnty. filed June 2, 2008).

In addition to Myers's and the Hartford Defendants' failure to disclose Myers's known conflict of interest, the complaint alleged that the Hartford Defendants knew or should have known that the Baja Policy was "inappropriate," and the promised tax benefits were impermissible in light of several IRS Announcements. ECF No. 2-3 ¶¶ 17, 27, 30, 33-36. The complaint alleged that Myers, "acting as [an] agent[] of Hartford . . . wrongly represented to Plaintiffs that the [announcements] would not affect them," which induced Ruark and Baja Holdings to pay Hartford additional premiums and file tax returns without the required forms for a listed transaction. *Id.* ¶ 36. In 2006, an IRS audit of Baja DBP disclosed defects in the Baja Policy. *Id.* ¶ 37. As a result of the Hartford Defendants' alleged misrepresentations, the Hartford Plaintiffs allegedly incurred "substantial audit-related expenses" and likely tax liability for impermissible deductions taken in connection with the Baja Policy premiums. *Id.* ¶ 38.

In January 2009, Myers and TGM learned that Ruark and his affiliates intended to pursue claims against them for the Baja Policy transaction unless a settlement was negotiated. ECF No. 18-2 ¶ 4. Myers and TGM informed CAMICO of these "potential claims" under the Policy. *Id.* ¶ 5. On February 13, 2009, CAMICO informed Myers and TGM that it "owe[d] no coverage obligation under the Policy in connection with [that] claim."

*Id.* at 8.   CAMICO explained that any accounting and financial services provided by Myers associated with the sale of the Baja Policy had been in his capacity as a Hartford agent.   *Id.* at 13. Thus, his activities were outside the scope of "Professional Services" covered by the Policy and within the "Special Exclusion Endorsement," "Insured Acting in Another Capacity," and "Products Liability" exclusions to coverage.   *Id.* at 13-14.

   B. The Underlying Actions

   On April 24, 2009, Ruark and his affiliates sued Myers and TGM in the Circuit Court for Wicomico County for negligence and negligent misrepresentation in connection with the Baja Policy transaction.[11]   ECF No. 2-2 ¶¶ 13-14, 19-20.   Also in April 2009, IAI filed a third party complaint in the Hartford Action for indemnification and contribution against, *inter alia*, TGM and Myers (the "IAI Third-Party Action").[12]   ECF No. 2-4 ¶¶ 19-25,

_____

[11] *See Ruark v. Myers*, Case No. 22-C-09-000708 (Cir. Ct. Wicomico Cnty. filed Apr. 24, 2009).   Among other things, the complaint alleged that, "while purporting to act as an accountant and tax advisor," Myers recommended Ruark and his affiliates create the Baja DBP, and that the Baja DBP be wholly funded through a life insurance policy and annuities written by Hartford.   ECF No. 2-2 ¶ 13.

[12] The IAI Third-Party Action alleged that "Myers advised [Baja Holdings] . . . that the premiums for the insurance products that funded the [Baja Holdings] 412(i) Plan were tax deductible expenditures under the Internal Revenue Code."   ECF No. 2-4 ¶ 6.

34-35.[13]  On June 23, 2009, Arbitration & Mediation, Inc. (A&M),
Caleb L. Fowler, and Lynne V. Fowler sued Myers and TGM in
Somerset County Circuit Court for negligence and negligent
misrepresentation in connection with a DBP Plan similar to the
Baja Policy (the "Fowler Action").[14]  ECF No. 2-5 ¶¶ 13-17.
CAMICO declined to defend TGM and Myers in the Ruark, IAI Third
Party, and Fowler Actions (collectively, the "underlying
actions").  Only the Fowler Action remains pending; the Ruark
Actions have settled.  *See* ECF No. 44-1 at 4.

   C. Procedural History of This Case

      On September 14, 2009, TGM and Myers sued CAMICO in
Wicomico County Circuit Court for a declaration of CAMICO's duty
to defend the underlying actions (Count I) and breach of
contract (Count II).  ECF No. 2 ¶¶ 40-50.  On October 22, 2009,
CAMICO removed the case to federal court based on diversity
jurisdiction.  ECF No. 1 ¶ 11.  On October 29, 2009, CAMICO
answered and counterclaimed for a declaration that it "owed and

---

[13] The Ruark and Hartford Actions were later consolidated.  *See*
ECF No. 44-1 at 4.  This memorandum opinion will refer to the
consolidated case as the "Ruark Actions."

[14] *See Fowler v. Myers*, No. 19-C09-013249 (Cir. Ct. Somerset
Cnty. filed June 23, 2009).  The complaint alleged that, among
other things, Myers had prepared and filed income tax returns
for the Fowler Plaintiffs without including forms required for a
listed transaction and without advising them of the penalties
that would be incurred as a result.  ECF No. 2-5 ¶ 27.

owes no . . . indemnity obligation concerning the underlying actions" and for attorney's fees.  ECF No. 9 at 11-16.[15]

On November 11, 2009, the Plaintiffs moved to dismiss the counterclaim, ECF No. 15, and for partial summary judgment, requesting (1) a declaration that CAMICO must provide them with a defense in the underlying actions, (2) expenses incurred in defending themselves "in an amount to be determined," and (3) attorney fees and costs incurred in bringing this action, ECF No. 14 at 20.  On December 21, 2009, CAMICO filed a cross motion for summary judgment on all the claims and counterclaim.  ECF No. 18 at 2; ECF No. 18-1 at 5.  On March 3, 2010, the parties jointly moved to stay discovery pending resolution of the dispositive motions.  ECF No. 24.  The parties agreed that "[i]f discovery is necessary following resolution of the pending motions, the parties will confer and submit a proposed Revised Scheduling Order to the Court for its consideration no later than ten (10) days after resolution of the motions."  *Id.*  The motion to stay was granted.  ECF No. 27.

On March 25, 2010, this Court denied the Plaintiffs' motions and granted CAMICO's motion for summary judgment.  ECF

---

[15] In its list of "Additional Defenses" and Counterclaim, CAMICO asserted that the Plaintiffs' claims "fail, at least in part," because "CAMICO's duty to defend and indemnify for a covered *Claim* arising from, related to or in connection with *Tax Shelter Investments* is limited to $100,000 in excess of the Policy's Per *Claim* Deductible."  *E.g.*, ECF No. 9 ¶ 55 (emphasis in original).

No. 30. On December 22, 2011, the Fourth Circuit reversed and remanded in a two-pronged opinion. ECF No. 35. First, the Fourth Circuit held that the underlying actions raised the "specter" of insurance coverage, triggering CAMICO's duty to defend. ECF No. 35 at 26. The court therefore directed this Court to grant the Plaintiffs' motion for partial summary judgment. *Id.* The court also held that, because the issue of whether Myers acted as Hartford's agent or broker "is not independent and separable from the issues to be decided in the underlying actions"--and the ultimate findings of fact at trial may trigger application of the Special Exclusion Endorsement, absolving CAMICO of any duty to indemnify--a declaration as to CAMICO's duty to indemnify would be "premature," and "should instead be made after the underlying actions are resolved." ECF No. 35 at 25, 26. The court therefore reversed this Court's grant of summary judgment in favor of CAMICO's counterclaim, and dismissed the Plaintiffs' motion to dismiss the counterclaim. *Id.* at 26.

On April 20, 2012, CAMICO moved to set a discovery schedule to determine whether the underlying actions are within the Policy's $100,000 sublimit for tax shelter investments, and whether there is any duty to indemnify. ECF No. 40. On May 7, 2012, the Plaintiffs timely opposed CAMICO's motion and filed a "cross motion" for final judgment on all claims in the

complaint.   ECF No. 44; ECF No. 44-1 at 2.   On June 7, 2012,

CAMICO timely opposed the Plaintiffs' cross motion for final

judgment and replied in support of its motion to set a discovery

schedule.   ECF No. 49; *see* ECF No. 48.   On June 25, 2012, the

Plaintiffs timely replied in support of their cross motion for

final judgment.   ECF No. 50.

## II. Analysis

CAMICO asks this Court to set a discovery schedule to

determine whether: (1) the underlying actions are within the

Policy's $100,000 sublimit applicable to defense costs and

indemnity for claims arising from, related to, or in connection

with tax shelter investments ("TSI"); and (2) there is any duty

to indemnify.   ECF Nos. 40, 41.   In a consolidated opposition to

CAMICO's motion and "cross motion" for final judgment, the

Plaintiffs counter that CAMICO is "wrong on the law and too

late" as to the first issue, and "wrong on the law and

premature" as to the second.   ECF No. 44-1 at 2 (emphases

omitted).   The Plaintiffs seek (1) a declaratory judgment that

CAMICO has an "ongoing and unqualified" duty to defend in the

ongoing Fowler Action; (2) judgment of $231,354.43, plus

prejudgment interest at six percent, for breach of contract; and

(3) attorney's fees and expenses incurred in this action.   ECF

No. 44.

A. CAMICO's Motion to Set Discovery

1. Applicability of the Tax Shelter Investment Sublimit

The Policy imposed a $100,000 sublimit on damages *and* claim expenses for each covered claim "arising from, related to or in connection with any *Tax Shelter Investment*." APLIP § I.C.1(a) (emphasis in original). "Tax Shelter Investment" was defined, *inter alia*, as a "reportable transaction," or "any . . . investment, plan or arrangement having tax avoidance or evasion as its primary purpose. An investment, plan or arrangement will have a primary tax avoidance or evasion purpose when that purpose exceeds any other purpose of the investment, plan or arrangement." APLIP § IV(s)(1)(i), (iii).

The Plaintiffs argue that the TSI sublimit "cannot" be applied to CAMICO's duty to defend. ECF No. 44-1 at 2 (emphasis omitted). Procedurally, the Plaintiffs argue that CAMICO has "waived" argument on the sublimit's applicability by "ignoring" the Plaintiffs' argument in earlier briefing that it did not apply. *Id.*; ECF No. 50 at 1. The Plaintiffs conclude that the inapplicability of the TSI sublimit to CAMICO's duty to defend "has already been decided as a matter of law." ECF No. 44-1 at 9.[16] Substantively, the Plaintiffs argue that a monetary

---

[16] The Court does not agree. From the outset of this litigation, CAMICO asserted that the TSI sublimit applied to any duty to defend in, or indemnify for, the underlying actions. *See* ECF No. 9 at 5-6, 11. According to the Plaintiffs, "[i]n light of

sublimit on a defense obligation "cannot be imposed under

Maryland law where the applicability of such a sublimit is

intertwined with the merits of the insured's defense and the

defense obligation must be decided on the underlying

allegations." *Id.* CAMICO objects that "allowing CAMICO to

review the papers generated and produced in [the Ruark and

Fowler Actions], as well as the Plan documents and

correspondence regarding the Plan, would not only be entirely

appropriate but would provide an expeditious way for the parties

to obtain a ruling on the applicable limit of liability." ECF

No. 49 at 4.

---

CAMICO's reliance on the sublimit in its initial pleadings,"
they "explicitly moved for summary judgment as to the
inapplicability of the sublimit to the duty to defend." ECF No.
44-1 (*citing* ECF No. 14-1 at 22-23; ECF No. 20 at 4 n.3).
CAMICO referenced the TSI sublimit in the introductions to its
motion for summary judgment and opposition, and cited the TSI
sublimit as a "key" Policy provision, but--because CAMICO
believed that the Plaintiffs' claims were excluded entirely from
coverage--did not otherwise argue that the limit applied. ECF
No. 18-1 at 5, 10-11; ECF No. 19 at 5, 10-11. This Court's
initial opinion cited the sublimit as relevant background
information, ECF No. 29 at 3-4 & n.6, but agreed that Myers's
activities were within the Special Exclusion Endorsement and
thus barred from coverage entirely, *id.* at 18. The Fourth
Circuit similarly addressed whether CAMICO had a duty to defend
in the first instance, not whether there were monetary
limitations on that duty. *See generally* ECF No. 35. This Court
declines to read into the record a finding that, because CAMICO
owed the Plaintiffs a duty to defend, that duty was by
implication unqualified. By asserting the TSI sublimit in its
answer and counterclaim, and stating in support of its motion
for summary judgment that the claims would be within the
sublimit "[i]f covered at all," CAMICO adequately preserved the
issue for review on remand. *See* ECF No. 9; ECF No. 18-1 at 5.

Because the Policy was issued to TGM in Maryland, Maryland law applies.[17]  "In Maryland, it is axiomatic that the duty to defend is broader than the duty to indemnify." *Perdue Farms, Inc. v. Travelers Cas. & Surety Co. of Am.*, 448 F.3d 252, 257 (4th Cir. 2006).  "An insurance company has a duty to defend its insured for all claims that are potentially covered under the policy." *Walk v. Hartford Cas. Ins. Co.*, 852 A.2d 98, 106 (Md. Ct. Spec. App. 2004).  In *Brohawn v. Transamerica Insurance Co.*, 347 A.2d 842 (Md. 1975), the Maryland Court of Appeals considered whether the trial court had erred in denying the defendant insurer's request for a declaratory judgment that it not be required to indemnify the plaintiff insured for any damages for which she may become liable in pending tort suits. *Id.* at 847.  The court held that "where . . . the question to be resolved in the declaratory judgment action will be decided in pending actions, it is inappropriate to grant a declaratory judgment."  *Id.* at 849.

Citing *Brohawn*, the Plaintiffs contend that "a determination that the sublimit is applicable for purposes of coverage would require CAMICO to establish--to the detriment of TGM and Myers in the underlying actions--that the referenced transactions were 'reportable' or 'listed' transactions and/or

---

[17] *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *Traylor v. Grafton*, 332 A.2d 651, 659 (Md. 1975).

had 'tax avoidance or evasion as [their] primary purpose.'"  ECF No. 44-1 at 11.  Discovery would not interfere with the Ruark Actions, which have since settled.  ECF No. 44-1 at 4.  As to the remaining Fowler Action, the Plaintiffs' argument is premature; CAMICO has moved to set a *discovery schedule*, not for a judgment declaring the sublimit's applicability.  The Plaintiffs alternatively argue that, "[a]t the very least," CAMICO's sublimit in its policy would be "ambiguous as applied to [the underlying actions] and must be construed against CAMICO and in favor of an unqualified duty to defend."  ECF No. 44-1 at 12.  To the extent there is ambiguity regarding the scope and relevance of the TSI sublimit provision, however, such ambiguity is best resolved through discovery--not by this Court.

2. To the Duty to Indemnify

CAMICO also requests this Court to set a discovery schedule as to its duty to indemnify.  ECF No. 41 at 3.  Again citing *Brohawn*, the Plaintiffs argue that CAMICO "cannot pursue a coverage determination that is intertwined with the underlying liability issues, as this would prejudice CAMICO's insureds in contravention of CAMICO's duty to defend."  ECF No. 44-1 at 13.[18]  As discussed above, the Plaintiffs appear to assume that because CAMICO could not presently prevail on its counterclaim, it is

---

[18] The Plaintiffs also argue that CAMICO's request for discovery on its indemnity obligation is "premature, advisory, and may become wholly or partially moot."  ECF No. 50 at 1.

similarly precluded from taking any discovery on that claim. *See id.* By the time discovery is completed, the remaining Fowler Action may well have concluded, rendering the indemnity issue ripe for review.

Thus, CAMICO's motion to set a discovery schedule will be granted.

## B. The Plaintiffs' Motion for Final Judgment

### 1. Legal Standard

Under Fed. R. Civ. P. 54(b), a district court may enter final judgment on one or more--but fewer than all--claims in a multiclaim action. Rule 54(b) provides,

> [w]hen an action presents more than one claim for relief--whether as a claim, counterclaim, crossclaim, or third-party claim . . . the court may direct entry of a final judgment as to one or more, but fewer than all, claims . . . only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

"The chief purpose of a Rule 54(b) certification is to prevent piecemeal appeals when multiple claims are resolved in the course of a single lawsuit." *Braswell Shipyards, Inc. v. Beazer E., Inc.*, 2 F.3d 1331 (4th Cir. 1993). The Rule also "allows the district court to provide relief to litigants that would suffer undue hardship if final judgment is not entered on

16

the adjudicated claim prior to the resolution of the unadjudica-ted claims." *Id.* However, certification "should neither be granted routinely, nor as an accommodation to counsel." *Id.* (internal citations omitted). The party seeking to obtain Rule 54(b) certification bears the burden of showing that it is warranted. *Id.*

2. The Merits

The Plaintiffs have cross moved for final judgment, seeking (1) a declaratory judgment that CAMICO has an "ongoing and unqualified" duty to defend the ongoing Fowler Action; (2) judgment of $231,354.43, plus prejudgment interest at six percent, for breach of contract[19]; and (3) attorney's fees and expenses incurred in this action. ECF No. 44. CAMICO "does not dispute" that it owes a defense obligation in connection with the Fowler Action, but argues that that obligation is limited to the $100,000 TSI sublimit. ECF No. 49 at 2; *see also* ECF No. 49-1. CAMICO notes that it has already paid $100,000 in connection with the Ruark Actions, and has thus "exhausted through payment" the TSI sublimit as that claim. ECF No. 49 at 2 n.2, 3. Finally, CAMICO agrees that the Plaintiffs are owed reasonable attorney's fees and costs for pursuing this coverage

---

[19] The $231,354.43 judgment includes $280,382.31 in attorney's fees and expenses incurred in the Ruark Actions, minus $100,000 paid to date by CAMICO, and $50,972.12 in attorney's fees and expenses incurred as of May 7, 2012 in the Fowler Action. ECF No. 44.

action, but only through March 23, 2011.   ECF No. 49 at 2 n.2;
see also ECF No. 49-2.

As discussed above, neither this Court nor the Fourth
Circuit has decided whether the Policy's $100,000 TSI sublimit
applies to CAMICO's duties to defend and/or indemnify.   See
supra note 16.   Discovery on that issue is necessary before this
Court can issue a declaratory judgment that CAMICO's duty to
defend the Fowler Action is "unqualified."   Further, because
CAMICO has already paid $100,000 in connection with the Ruark
Actions, see ECF No. 44, the Plaintiffs' requested $180,382.31
judgment in excess of that amount is premature in advance of a
ruling that the sublimit does not apply.   Because it is unclear
whether the Fowler Action costs have, to date, exceeded that
amount, the Court will not issue final judgment as to that
claim.   Finally, the Court will reserve judgment on the
Plaintiffs' attorney's fees and expenses incurred this action,
pending resolution of the outstanding issues.

The Plaintiffs' motion for final judgment will be denied.

III. Conclusion

For the reasons stated above, CAMICO's motion to set a
discovery schedule will be granted, and the Plaintiffs' cross
motion for final judgment will be denied.

_____2/22/13_____
Date

_____
William D. Quarles, Jr.
United States District Judge

18